IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CELIA COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17-cv-18 (LMB/IDD) |
| ) | |
| PENTAGON FEDERAL ) | |
| CREDIT UNION, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss. Plaintiff Celia Coleman ("plaintiff" or "Coleman") has sued her former employer, the Pentagon Federal Credit Union ("defendant" or "PenFed"), alleging sexual harassment, a hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; a hostile work environment, retaliation, and discriminatory discharge under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; as well as raising a common law wrongful discharge claim.[1] Plaintiff has also named four individual PenFed employees as defendants: Muna Hall ("Hall"), Shelia Boykin ("Boykin"), Veronica Dewald ("Dewald"), and Marilynn Wells ("Wells").

Plaintiff, who has been represented by counsel throughout these proceedings, has filed a total of four complaints in this case. On January 4, 2017, plaintiff filed her original complaint [Dkt. 1], which was closely followed by an amended complaint [Dkt. 4] on January 13, 2017. On February 9, 2017, defendants filed their Motion to Dismiss. The next day, February 10, plaintiff filed a second amended complaint [Dkt. 18], which corrected the numbering of the

---

[1] Plaintiff originally included claims for negligent supervision and negligent retention, which have now been dropped.

counts alleged. Finally, on February 21, 2017, plaintiff filed a motion to amend her complaint along with her opposition to the Motion to Dismiss. Finding that the proposed revisions did not materially change the complaint, the Court granted the motion to amend on March 7, 2017. Accordingly, plaintiff filed her fourth complaint [Dkt. 26] on March 10, 2017, which is the operative complaint for purposes of this Motion to Dismiss. In this fourth iteration of the complaint, plaintiff failed to correct glaring legal errors despite having amended it not once but twice since the Motion to Dismiss identifying those errors was filed. Accordingly, for the reasons stated in open court and further detailed in this Memorandum Opinion, defendants' Motion to Dismiss will be granted.

## I. BACKGROUND

Coleman is a 55 year old woman who worked at PenFed for 31 years, which entitled her to a pension. Second Am. Compl. ("Compl."), [Dkt. 26] ¶¶ 13.[2] The complaint does not contain any allegations detailing her job title or duties, and does not make it clear whether she is currently drawing a pension; however, plaintiff's first Equal Employment Opportunity Commission ("EEOC") charge states that she was a "Mailroom Specialist" and her second EEOC charge states she was a "Card Fraud Specialist." [Dkt. 19-2] at 1; [Dkt. 19-3] at 1.

Coleman alleges that sometime in 2009, Hall, whom plaintiff was "assigned to work with," "physically assaulted plaintiff" on PenFed's premises by touching her, rubbing her shoulders, and hitting her hard enough to cause bruising. Compl. ¶¶ 25–27. The complaint alleges that Coleman reported the incident to her supervisors, who separated Coleman and Hall by transferring Coleman to the credit card fraud department. Id. at ¶ 29. According to plaintiff's

---

[2] Although plaintiff has captioned this document the "Second" Amended Complaint, it is her third.

2

EEOC charges, "the harassment continued to occur on a consistent basis" after her transfer, despite repeated reports to supervisors. [Dkt. 19-2] at 1; [Dkt. 19-3] at 1.

The complaint alleges that between 2009 and 2016, "numerous inappropriate and discriminatory comments were made by Defendants regarding [Coleman's] age;" however, the only specific incident she describes occurred on an unspecified date, when Debbie Ames Naylor ("Naylor"), whom plaintiff refers to as a supervisor, "referred to [Coleman's] hair as gray and stated that she was too old to work at" PenFed. Compl. ¶ 55.[3]

In July 2016, Coleman and Hall were once again assigned to work together. According to plaintiff, "[t]his was a sinister tactic implored [sic] by the management at [PenFed] to target and force [plaintiff] out of her job into a forced retirement that had substantial [sic] less cash value than had she been permitted to continue to work another 15 years until age 70, which was mandatory retirement." Compl. ¶ 30. Specifically, plaintiff claims that she told Boykin (who appears to be a supervisor or human resources officer) "that she was being discriminated against and targeted by [Hall] and could not be subjected to any offensive touching, physical or mental abuse from [Hall] or become confronted by [Hall]." Id. ¶ 33. According to plaintiff, she specifically told human resources that this activity was motivated by her age and sex. Id. at ¶ 47. Boykin allegedly verbally reprimanded Coleman at the July meeting. Id. at ¶ 16.

The complaint goes on to allege that after that report, "[i]nstead of accommodating [Coleman] by investigating the allegations," the defendants "decided to institute a fraudulent and retaliatory plan of action and hostile work environment in an attempt to try and force [Coleman], a 31-year, dedicated, loyal employee out of the credit union." Id. at ¶ 36. This plan was allegedly executed by "falsely accusing [Coleman] of improper conduct, and falsely creating a

---

[3] During oral argument, defendant claimed Naylor was a co-worker.

fraudulent reprimand to force and pressure [Coleman] to sign it." Id. at ¶ 37. Coleman claims that on September 9, 2016, she "was escorted into a room with [Boykin, Dewald,[4] and Wells], who "mobbed her" and used threatening and coercive language in an attempt to make [Coleman] sign a written reprimand without affording [Coleman] the opportunity to have counsel review the document." Id. at ¶¶ 17, 39. According to plaintiff, forcing her to sign the reprimand was retaliation against her for complaining about Hall meant to "forcibly drive her out of the company" in an "attempt[] to disguise the termination as a 'voluntary acceptance of retirement,' when in reality, it was a cold and calculating termination." Id. at ¶ 40. Coleman refused to sign the reprimand, and "quietly walked out of the meeting." Id. Shortly thereafter, she was asked to leave and was prevented from accessing her computer and her office. Id.[5]

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 5, 2016, alleging age discrimination and a second charge on October 27, 2016, alleging sex discrimination, age discrimination, and retaliation.

Plaintiff is seeking $5,000,000 in damages, which includes back pay, front pay, and punitive damages, along with reinstatement, removal of the written reprimand, and attorney fees and costs. Id. at 13.

## II. DISCUSSION

### A. Standard of Review

According to Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a

---

[4] The EEOC charges clarify that Dewald was in the human resources department. [Dkt. 19-2] at 1; [Dkt. 19-3] at 1.

[5] At oral argument, defendant represented that plaintiff voluntarily resigned and is currently receiving retirement benefits from the company, a claim that plaintiff disputed.

complaint must set forth sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). The Court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), but only to the extent that those allegations pertain to facts rather than to legal conclusions. Iqbal, 555 U.S. at 678. Crucially, statements that amount to legal conclusions without alleging any facts will not survive a Rule 12(b)(6) motion to dismiss. Id.

B. Individual Defendants

Individual employees (including supervisors) are not appropriate defendants under federal discrimination laws, including Title VII and the ADEA. Lissau v. So. Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998). Accordingly, Counts 1 through 3 and 5 must be dismissed as to Hall, Boykin, Dewald, and Wells.

C. Count 1: Sexual Harassment (Title VII)

Plaintiff alleges that Hall's conduct amounted to sexual harassment. PenFed argues that the sole incident described by plaintiff is time barred and that the allegation is insufficient to maintain a claim for sexual harassment.[6]

To state a claim for sexual harassment, a plaintiff must plead facts sufficient to establish that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability

---

[6] Defendants originally argued that this claim, and several others, fell outside the scope of the plaintiff's EEOC charge. When provided with more complete copies of the EEOC charges as exhibits to plaintiff's memorandum in opposition to the motion to dismiss, defendants dropped this argument.

5

on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (holding that "sexual harassment" is only actionable under Title VII if the elements of a "hostile work environment" claim are proven).

Coleman fails to satisfy the second and third prongs of that test. The only actual incident of unwanted touching that Coleman described occurred in 2009. Any complaint on that basis had to be filed with the EEOC within 300 days. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (plaintiff must file an EEOC charge within 300 days in a deferral state like Virginia). Plaintiff filed her sexual harassment charge with the EEOC on October 27, 2016, well over 300 days since the 2009 incident allegedly occurred. Accordingly, any complaint based on that incident is time barred.

Even if plaintiff were not time barred, plaintiff has not described conduct that was sufficiently severe or pervasive to make out a sexual harassment claim. A single incident of unwelcome touching does not amount to an atmosphere "sufficiently severe or pervasive to alter the conditions of employment" or "create an abusive atmosphere." Bass, 324 F.3d at 765; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). Although plaintiff alleges that Hall rubbed her shoulders and hit her, causing bruising, there is no allegation that the physical injury was severe or lasting. Such an incident might be temporarily uncomfortable, but it is not "extremely serious." Moreover, although the complaint and the EEOC charges repeatedly assert that the harassment continued after 2009, none of those documents describes a single incident in factual terms. In fact, the complaint states that plaintiff and Hall were separated until July 2016. Mere recitation of the legal standard for harassment is not sufficient to state a claim under

6

Rule 8. Iqbal, 555 U.S. at 678. Accordingly, plaintiff has not pleaded sufficient facts to show that there was any harassing conduct, let alone that it was severe or pervasive.

Plaintiff also has not pleaded facts sufficient to show that the 2009 touching incident was motivated by gender. Both Hall and Coleman are women, and there are no facts in the record to suggest that the contact was motivated by plaintiff's gender. Although a shoulder rub can be a sexual overture, there is nothing inherently sexual about the gesture. Absent more, the description of the event currently in the complaint does not support a reasonable inference that Hall's conduct was motivated by Coleman's gender. Count 1 therefore fails on that basis as well.

D. Count 2: Retaliation (Title VII and ADEA)

PenFed argues that plaintiff has not adequately alleged that she engaged in a protected activity that would support a retaliation claim.

To succeed on a retaliation claim, a plaintiff must first make out a prima facie case by satisfying three elements: (1) she engaged in a protected activity known to the decisionmaker; (2) she suffered an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). In a Title VII retaliation claim, causation must be shown "according to traditional principals of but-for causation." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

Plaintiff's complaint describes two statements that might be construed as alleging protected activity. First, plaintiff claims that "she filed a Complaint with Defendant [Boykin] that she was being discriminated against and targeted by [Hall] and could not be subjected to any offensive touching, physical or mental abuse from [Hall] or become confronted by [Hall]." Compl. ¶ 33. Plaintiff does not provide a date for this complaint. Second, plaintiff alleges that

7

she alerted Boykin to "disturbing, harassing, and discriminatory conduct . . . in July 2016," claiming "she was being discriminated against based on her age and sex." Id. at ¶¶ 46–47. Again, plaintiff alleges no specific incidents of such conduct.

Plaintiff's conclusory recitals of statutorily prohibited categories of behavior fall short of what Rule 8 requires. Rather than describing the incidents that plaintiff allegedly reported to Boykin with factual detail, plaintiff merely lists various categories of prohibited behavior. Plaintiff's first description of the protected activity is difficult to comprehend but does not even mention plaintiff's gender, referring instead to generic "discrimination." Her second refers to "discriminatory, retaliatory, and harassing conduct," but does not describe that conduct. Bare "legal conclusions" such as these do not satisfy federal pleading standards and Count 2 must therefore be dismissed.

At oral argument, plaintiff's counsel was asked whether he had any additional facts to support this contention. He responded that he hoped to elicit such facts in discovery; however, it is well settled that discovery may not be used as a "fishing expedition," particularly where, as here, the facts in question would be available from the plaintiff herself during a pre-filing investigation. See Weinstein v. Todd Marine Enterprises, Inc., 115 F. Supp. 2d 668, 676 (E.D. Va. 2000); see also Parsch v. Massey, 79 Va. Cir. 446, 2009 WL 7416040, at *11 (Va. Cir. Ct. Nov. 5, 2009) (discussing an attorney's ethical obligation to conduct a pre-filing investigation).

E. Count 3: Hostile Work Environment (Title VII and ADEA)

Plaintiff alleges a hostile work environment under Title VII and the ADEA. PenFed argues that this claim duplicates Count 1 with respect to Title VII and that plaintiff has failed to state a prima facie case of a hostile work environment based on age.

The Supreme Court has held that, under Title VII, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's

8

employment and create an abusive working environment." Meritor, 477 U.S. at 67 (internal quotation marks omitted). Accordingly, plaintiff's hostile work environment claim under Title VII fails for the same reasons as Count 1.

With respect to the ADEA, a plaintiff alleging a hostile work environment based on age must show: (1) the plaintiff experienced unwelcome conduct; (2) based on the plaintiff's age; (3) the conduct was "sufficiently severe or pervasive" to create an abusive work environment; "and (4) there is some basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745–46 (4th Cir. 2006). Furthermore, "minor incidents, even in the aggregate, do not merit relief." Mayo v. Smith, No. 1:15-cv-0029, 2016 WL 2894871, at *8 (E.D. Va. May 16, 2016).

Plaintiff has alleged precisely one incident of unwelcome conduct related to her age—the comment that she had "gray hair" and was "too old" to work at PenFed. Compl. ¶ 55. Such a comment falls far short of "pervasive" or "severe" abuse. It also fails because there is no time frame provided. Accordingly, plaintiff has not stated a claim for a hostile work environment under the ADEA.

F. Count 4: Wrongful Discharge (Common Law)[7]

In Virginia, a common law claim for wrongful discharge may be maintained if one of three circumstances is met: (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) "the employee's refusal to engage in a criminal act." Rowan v. Tractor Supply Co., 263 Va. 209,

---

[7] Although plaintiff cites Title VII and the ADEA in Count 4 of the complaint (¶ 50), in their memoranda the parties treat it as a common law action for wrongful discharge.

213–14 (2002). Virginia has explicitly abrogated the common law action for wrongful discharge from employment "based upon the public polices reflected in the" Virginia Human Rights Act, which include a policy against discrimination on the basis of age or sex. Doss v. Jamco, Inc., 254 Va. 362, 367, 372 (1997).

To the extent that plaintiff asserts a wrongful discharge claim based on age or sex discrimination, then, she is plainly barred by Doss. Apparently recognizing as much in her sur-reply, plaintiff argues that the policy underlying her wrongful termination charge is Virginia's policy against fraud. That theory fails for two reasons. First, plaintiff has not pointed to a statutory "right against fraud," citing only Virginia case law recognizing fraud as a cause of action. Rowan requires that the policy in question be statutory, meaning that plaintiff's claims grounded only in case law fail. Even if plaintiff could point to a Virginia statute creating the necessary right, her claims would still fail because she has not pleaded the alleged fraud with the particularity required by Rule 9(b). Plaintiff discusses the alleged "fraudulent scheme" in ominous but highly generalized terms as a plot to prevent plaintiff from drawing a higher pension, but does not identify with specificity any fraudulent statements or representations by PenFed management. The closest she comes is to describe a "fraudulent reprimand," but she does not describe the content of that reprimand or how it was false.[8] Accordingly, plaintiff's wrongful discharge claim fails.

G. Count 5: Discriminatory Discharge (ADEA)[9]

A plaintiff has two options when attempting to make out a case of discriminatory

---

[8] Asked at oral argument about what the content of this reprimand was, plaintiff's counsel replied that he did not know.

[9] During oral argument, defendant claimed that plaintiff voluntarily resigned, which plaintiff denies. This discussion assumes that plaintiff was either terminated or constructively discharged.

discharge on the basis of age. The first is to offer direct evidence of intentional discrimination. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004), abrogated on other grounds by Nassar, 133 S. Ct. at 2533. The second option is the McDonnell Douglas burden shifting framework. To prevail on a claim of discriminatory discharge under McDonnell Douglas, a plaintiff must first make out a prima facie case by showing that: (1) the plaintiff is a member of a protected class; (2) an adverse employment action occurred; (3) at the time of the adverse employment action, the plaintiff was performing duties "at a level that met the employer's legitimate expectations;" and (4) the job remained open or was filled by someone outside the plaintiff's protected class. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The protected class for purposes of the ADEA is persons aged 40 years or older. Lewis v. Kmart Corp., 180 F.3d 166, 171 (4th Cir 1999).

If the plaintiff succeeds in establishing the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Hux v. City of Newport News, 451 F.3d 311, 314–15 (4th Cir. 2006). Because this is only a burden of production, the reasons proffered need not ultimately persuade the court. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993). To overcome a defendant's non-discriminatory reasons, the plaintiff must prove that those reasons were not the real basis for the adverse decision, but in fact a pretext for discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This third and final step "merges with the [plaintiff's] ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

With respect to intentional discrimination, plaintiff has not alleged any facts that a decisionmaker was motivated by her age. In particular, plaintiff has not alleged that Naylor, who

is the only person she identifies as making an age related comment, was involved in the alleged decision to terminate her. No comments about age are attributed to the decisionmakers. Plaintiff raises the possibility that PenFed was concerned about having to pay a higher pension if she reached the age of 70, but that assertion is not supported by any factual allegations in her complaint; rather, plaintiff simply states that she believes this motivated the decision to terminate her. See Compl. ¶ 56. Plaintiff's speculation, unsupported by any factual allegations, is not enough to survive a motion to dismiss. Iqbal, 555 U.S. at 678.

Plaintiff also has not alleged facts that satisfy the final two elements of a prima facie case. Specifically, she has not alleged any facts about what her job duties were, much less whether she was satisfactorily completing them at the time that she was fired, and she failed to allege any facts about her position, whether it was filled by someone outside her protected class or remained open. Moreover, for the reasons discussed above, plaintiff has failed to allege any facts supporting a claim of pretext beyond her own speculation. Accordingly, plaintiff's ADEA discriminatory discharge claim must be dismissed.

### III. CONCLUSION

For the reasons stated in open court and in this Memorandum Opinion, defendants' Motion to Dismiss will be granted by an appropriate order to accompany this Memorandum Opinion.

Entered this 17th day of March, 2017.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge